# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KRISSY BONNELL                          :          CIVIL ACTION
                                        :
    v.                                  :
                                        :
KILOLO KIJAKAZI,                        :
Acting Commissioner of                  :
Social Security                         :          NO. 21-73

## O P I N I O N

SCOTT W. REID                                      DATE:  May 30, 2023
UNITED STATES MAGISTRATE JUDGE

Krissy Bonnell brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As explained below, I conclude that the Request for Review should be denied and judgment entered in favor of the Commissioner.

I.      *Factual and Procedural Background*

Bonnell was born on July 15, 1992.  Record at 281.  She left school in the twelfth grade and later obtained a GED.  Record at 560.  She was found to have no prior relevant work because of the low level of her earnings, although she worked part-time as a cashier for over a year. Record at 30, 560.  On December 26, 2017, Bonnell filed an application for DIB, in which she alleged disability since December 25, 2017, on the basis of attention-deficit hyperactivity disorder ("ADHD"), a bipolar disorder, and anxiety.  Record at 294, 335.  On April 4, 2018, she filed an application for SSI.  Record at 281.

Bonnell's applications were denied on August 15, 2018.  Record at 90, 101.  She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 147.  A

hearing took place in this case on January 28, 2020.  Record at 47.  On March 9, 2020, the ALJ

issued a written decision denying benefits.  Record at 22.  The Appeals Council denied Bonnell's

request for review on November 6, 2020, permitting the ALJ's decision to stand as the final

decision of the Commissioner of Social Security.  Record at 1.  Bonnell then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. §405(g); *Richardson v. Perales*, 402

U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence

is relevant evidence which a reasonable mind might deem adequate to support a decision.

*Richardson v. Perales*, *supra*, at 401.  A reviewing court must also ensure that the ALJ applied

the proper legal standards.  *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984); *Palmisano v. Saul*,

Civ. A. No. 20-1628605, 2021 WL 162805 at *3 (E.D. Pa. Apr. 27, 2021).

To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-

step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial
> gainful activity, we will find that you are not disabled.  (ii)  At the second step, we
> consider the medical severity of your impairment(s).  If you do not have a severe
> medically determinable physical or mental impairment that meets the duration
> requirement in §404.1590, or a combination of impairments that is severe and meets the
> duration requirement, we will find that you are not disabled.  (iii)  At the third step, we
> also consider the medical severity of your impairment(s).  If you have an impairment(s)
> that meets or equals one of our listings in appendix 1 of this subpart and meets the
> duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

Before going from the third to the fourth step, the Commissioner will assess a claimant's

residual functional capacity ("RFC") based on all the relevant medical and other evidence in the

case record.  *Id.*  The RFC assessment reflects the most an individual can still do, despite any

limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id.*

III.     *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ found that Bonnell suffered from the severe impairments of

bipolar disorder, anxiety, and personality and impulse control disorders.  Record at 25.  She

found that no impairment, or combination of impairments, met or medically equaled a listed

impairment as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Record at 25.

The ALJ determined that Bonnell retained the RFC to engage in work at all exertional

levels but with the following non-exertional limitations:

> Work in a low-stress job, defined as having only occasional decision-making and only occasional changes in work setting; perform simple, routine tasks at a consistent pace, but not a production-rate pace where each task must be completed within a strict time deadline; and only occasional interaction with supervisors, the general public, and with co-workers; and no work involving shared tasks with co-workers.

Record at 26.  (Internal citations omitted from all quotes from the ALJ's Decision).

Relying upon the evidence of a vocational expert who appeared at the hearing, the ALJ found that Bonnell could work as a laundry worker, hand packer, or housekeeper/cleaner. Record at 30. She concluded, therefore, that Bonnell was not disabled. Record at 31.

In her Request for Review, Bonnell argues that the ALJ erred in failing to give collateral estoppel effect to a 2013 decision granting her Child's Dependent Benefits ("CDB"). She also maintains that the ALJ wrongly evaluated evidence provided by treating psychiatrist, Alex T. Thomas, M.D., consulting mental health expert Gregory Coleman, Psy.D., and non-examining mental health expert Dennis C. Gold, Ph.D. Finally, she argues that the hypothetical questions posed by the ALJ to the vocational expert were incomplete.

IV.    *Discussion*

    A.    *Bonnell's Child's Dependent Benefits*

Bonnell had a traumatic early life, and was removed from her home when she was around five years old. Record at 770. Her parents gave up their rights to her. *Id*. By the age of nine, Bonnell was placed in a group home after several foster placements failed due to her behaviors. *Id*. During her time in group homes, she received psychiatric treatment. Record at 774.

On August 2, 2013, when Bonnell was nineteen years old, an ALJ awarded her Child's Disability Benefits and Supplemental Security Income on the basis of her mental health impairments. Record at 85, 87. This decision was based upon the fact that Bonnell had been "moved around in foster care" and hospitalized multiple times because of behaviors such as aggression, violent threats, and self-cutting. Record at 88. The ALJ determined that Bonnell met the criteria for Listing 12.04 pertaining to affective disorders. *Id*. However, he added: "Medical improvement is expected with appropriate treatment." Record at 89. He therefore recommended "a continuing disability review" in two years. *Id*.

Bonnell's continuing disability review took place in 2017.  *See* Record at 265, 559.  In a letter dated July 26, 2017, Bonnell was informed that she was determined to be no longer eligible for CDB due to an improvement in her health.  Record at 265.  The letter told her that she had sixty days from receipt of the letter to appeal the cessation of her benefits.  Record at 266.  Bonnell did not appeal the July 26, 2017, decision.  Record at 54.

Confusing circumstances created by the Agency may have contributed to Bonnell's failure to appeal; before the 60-day appeal period lapsed, Bonnell received another notice from the Agency, dated September 1, 2017, which stated that her CDB *would* be continued.  She and her case manager called the local agency together on December 7, 2017, however, and were told that Bonnell would have had to appeal the July 26, 2017, discontinuation in order to prevent a termination of her CDB.  Record at 602.  She did not try to file an untimely appeal.

When Bonnell appealed the August, 2018, denial of benefits in her present claims for DIB and SSI, she included a claim that the 2013 determination of disability was still in effect, and that the Agency was therefore estopped from finding her able to work, under 20 CFR § 404.950(f), which provides that a decision under one title of the Social Security Act precludes a contrary decision under another title.

The ALJ originally assigned to the 2018 DIB and SSI claims held a pre-hearing conference on May 1, 2019, to explore the facts underlying the collateral estoppel argument.  Record at 37. At that conference, an Agency representative explained that the September 1, 2017, determination was not based on Bonnell's "medical," but on her participation in a trial work period.  This would appear to mean that the September 1, 2017, letter only determined that Bonnell would not lose her benefits because of having worked.  Thus, that determination could

not override the July 26, 2017, discontinuation of CDB due to medical improvement.  Record at 41.

The fact that even the ALJ needed a conference to understand the significance of the two letters shows how easily Bonnell could have been confused.  At the end of the May 1, 2019, conference, however, the ALJ decided that he was not bound by the 2013 determination of disability because it was made so long before the filing of the SSI and DIB applications, and because the benefits awarded in 2013 had been terminated.  Record at 45.  Bonnell's counsel took an exception on the record to this decision.

A different ALJ presided at Bonnell's January 28, 2020, hearing.  Counsel once again argued that the 2013 finding of disability for purposes of CDB should have precluded the Agency from finding Bonnell not to be disabled for purposes of SSI and DIB.  Record at 53-54.  This ALJ, however, agreed with the former ALJ that Bonnell's CDB had been terminated for medical improvement so that the 2013 disability determination could not have a collateral estoppel effect.  Record at 55.

The new ALJ also pointed out that, even if Bonnell's CDB had not been terminated, the 2013 decision could not have a preclusive effect on the 2018 claims, because of an Agency policy that collateral estoppel does not apply when the criteria for a medical finding were changed in the time between the old and new decisions.  Record at 55-56, *and see and* HALLEX I-2-4-20 (C) ("Administrative res judicata does not apply when there has been a change in issues; for example, when there has been a change in a specific section in the Listing of Impairments …").

Specifically, the criteria for Listing 12.04, under which the CBD case was decided, was changed effective January 17, 2017, and this precluded the application of collateral estoppel in her case.  Record at 55-56, *and see* POMS DI 27515.005 (B) (Table) ("When the basis for the prior favorable determination or decision was meeting or equaling a 12.00 listing before 01/17/2017, collateral estoppel does not apply and a new determination is required").

Bonnell argues here that the ALJ erred.  She argues that the 2013 award of CDB is still in effect because it was not terminated "after proper notice and hearing."  Plaintiff's Request for Review at 5.  However, even in her Reply memorandum, Bonnell has not challenged the ALJ's conclusion regarding POMS DI 27515.005 (B).  POMS regulations do not have the force of law, but they are the authorized means for issuing Social Security policy and operating instructions. *Edelman v. Commissioner of Soc. Sec.*, 83 F.3d 68, 71 at n.2 (3d Cir. 1996).  It is not reasonably open to debate that the criteria for all 12.00 Listings, pertaining to mental health, were changed effective 2017, between Bonnell's CBD decision and the filing of her DIB and SSI cases.

Thus, although the facts surrounding  Bonnell's failure to appeal the termination of her CDB could be seen as ambiguous, the change in mental health criteria in 2017 means that the ALJ was not obligated to find Bonnell disabled because of the 2013 determination.[1]  For this reason, if for no other, she is not entitled to relief on this claim.

---

[1] It is also relevant that the ALJ who issued the 2013 grant of CDB specified that a review should take place in two years.  Therefore, there is no possible outcome for Bonnell where she could continue to receive benefits on the basis of the 2013 findings.

B.      *Treatment of the Medical Opinion Evidence*

1.      *Drs. Gold and Coleman*

The record contains an August 9, 2018, mental status evaluation and a Medical Source

Statement form from Gregory Coleman, Psy.D., an independent examining mental health expert.

Record at 762, 767.  Dr. Coleman described Bonnell as cooperative, with adequate social skills.

Record at 764.  Her affect was anxious, and her motor behavior was restless.  *Id*.  However, she

was fully oriented, with coherent and goal directed thought processes, normal speech, and no

evidence of hallucinations, delusions or paranoia.  *Id*.  Her attention and concentration were

intact, although her recent and remote memory were mildly impaired due to anxiety.  Record at

765.  Her intellectual functioning was average, and her insight and judgment were fair.  *Id*.

Dr. Coleman indicated on the Medical Source Statement form that Bonnell had no

limitation in her ability to understand, remember, and carry out simple instructions, or to make

judgments on simple work-related decisions.  Record at 767.  She was only mildly limited in her

ability to understand, remember, and carry out complex instructions.  *Id*.  However, she was

moderately limited in the ability to interact appropriately with the public, supervisors, or co-

workers, and in her ability to respond appropriately to "usual work situations and to changes in a

routine work setting."  Record at 768.   The ALJ found Dr. Coleman's report persuasive, writing

that it was supported by evidence in the record and consistent with the record as a whole.

Record at 29.

The ALJ also considered the findings of the Agency reviewing psychological consultant,

Dennis C. Gold, Ph.D.  Record at 19.  Dr. Gold found that Bonnell was moderately limited in

many areas, but concluded:

> The Claimant's ADL's and social skills are functional.  She is able to communicate
> clearly and is capable of self-advocating.  Demonstrates adequate cognitive functioning
> and remains capable of understanding, recalling and completing simple, routine

instructions.  She is able to follow a routine and deal with the challenges, demands and changes of common task-oriented settings.  Consequently, the Claimant is able to engage in simple, routine tasks despite the limitations from her impairment.

Record at 113, *and see* Record at 110-112.

The ALJ's discussion of Dr. Gold contains several transcription errors, and at one point it mistakenly calls Dr. Gold "Dr. Coleman":

The State agency's psychological consultant, Dennis C. Gold, Ph.D., opined that the claimant has moderate difficulty with understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself; and that the claimant is able to understand, recall, and complete simple, routine instructions, follow a routine and deal [*sic*, presumably "deal with the challenges, demands and changes of common task-oriented settings"].  The undersigned finds the opinion of **Dr. Coleman** partially persuasive.

Record at 29.  (Bold supplied for emphasis).

Bonnell argues that the ALJ erred:  "Her decision to find Dr. Gold's psychological consultant report persuasive partially is based upon finding Dr. Coleman's opinion 'partially persuasive.'"  Claimant's Brief at 7.  She writes:  "[T]he opinion of Dr. Gold is obviously not evaluated as the value of his opinion as the ALJ [*sic*] relies on the evaluation of Dr. Coleman." *Id*. at 8.  She also argues "The ALJ made two findings that cannot be reconciled … First she found Dr. Coleman's opinion 'persuasive.'  In her next paragraph, she finds Dr. Coleman 'partially persuasive.'  It cannot be both."  *Id*. at 8.

These claims must be rejected.  It is quite clear that Dr. Gold's name was simply replaced by Dr. Coleman's in error.  The ALJ had already set forth her conclusion with respect to Dr. Coleman's findings in the previous paragraph.  It cannot logically be accepted the ALJ would (a) neglect to make any conclusion about Dr. Gold's submissions, and (b) coincidentally, also decide to add a second and inconsistent conclusion about Dr. Coleman at the end of a paragraph which only discusses Dr. Gold.

2.      *Dr. Thomas*

Alex T. Thomas, M.D., a psychiatrist who treated Bonnell at Bet-El Counseling Services

beginning in September, 2018, submitted a Mental Impairment Questionnaire form dated April

27, 2019.  Record at 849.  He submitted a second Mental Impairment Questionnaire dated

February 17, 2020.  Record at 2089.  The ALJ wrote:

> The claimant's psychiatrist, Alex T. Thomas, M.D., opined that the claimant has
> moderate difficulty with restrictions of activities of daily living and maintaining social
> functioning; she has frequent deficiencies of concentration, persistence or pace; and she
> suffers repeated (three or more episodes of deterioration or decompensation in work [or]
> in a work-like setting, which causes the individual to withdraw from that situation or to
> experience exacerbation of signs and symptoms.  The undersigned finds the opinion of
> Dr. Thomas partially persuasive.  The claimant's treatment notes reflect that her mental
> status examinations reflect that she had good memory, fair-to-limited attention and
> concentration, average intelligence, and cooperative attitude, she had not suffered from
> repeated episodes of decompensation as she was only hospitalized once.

Record at 29.

In both of his reports, Dr. Thomas assigned Bonnell a GAF ("Global Assessment of

Functioning") score of 49, which indicates serious limitations in her overall functioning.  Record

at 849, 2089.  He assigned her the same GAF score in a Bet-El Counseling Services Psychiatric

Evaluation dated February 15, 2019.  Record at 846.  The ALJ refused to consider the GAF

scores, writing:  "The claimant was given a GAF score of 45.  The undersigned did not provide

articulation about the evidence that is inherently neither valuable nor persuasive in accordance

with 20 CRF 404.1520b(c) and 416.920b(c)."  Record at 29.

Bonnell is correct in arguing that the ALJ erred in dismissing the GAF scores without

consideration.  The Diagnostic and Statistical Manual for Mental Disorders (DSM), which

previously promulgated the GAF scale, has abandoned it because of its "conceptual lack of

clarity," and the questionable probative value of GAF scores.  *See* DSM-V at 16 (5th Ed. 2013).

Accordingly, the Social Security Administration issued guidance in 2013 indicating that a GAF

score "does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis." *Kroh v. Colvin*, Civ. A. No. 13-1533, 2014 WL 4384675 at *18 (M.D. Pa. Sep. 4, 2014), *citing Lane v. Colvin*, No. C13-5658, 2014 WL 1912065 at *9 (W.D. Wash. May 12, 2014), which quotes AM-13066 (July 22, 2013).

Nevertheless, the same Agency guidance explains that the SSA "will continue to receive and consider GAF in medical evidence," considering it together "with all the evidence about a person's functioning." *Id.*; *and see Nixon v. Colvin*, 190 F. Supp.3d 444, 447 (E.D. Pa. 2016) (citing *Kroh*), and *Cordero v. Kijakazi*, 597 F. Supp.3d 776, 795 at n. 30 (E.D. Pa. 2022), (citing *Nixon* and *Kroh*).

In accordance with AM-13066 and the cases which interpret it, the ALJ's summary dismissal of Bonnell's GAF scores as "inherently neither valuable nor persuasive" was erroneous. However, not every error requires remand. Remand is not necessary where it would not affect the outcome of a case. *Rutherford v. Barnhart*, 399 F.3d 546, (3d Cir. 2005). Thus, the significance of the ALJ's error depends upon whether, considered together with all of the evidence about Bonnell's functioning, the GAFs of 49 would cause the ALJ to rethink her conclusion.

I conclude that they would not. As the ALJ noted in her review of his submissions, Dr. Thomas's clinical observations were largely normal. Record at 842. He found Bonnell to be fully oriented, with an appropriate appearance and affect, normal thought content, a "clear, coherent and goal oriented" thought process, no psychotic symptoms, a cooperative attitude, and average cognitive functioning, with good insight. *Id.*

Further, although Bonnell told the ALJ she resigned from her job as a cashier because of her anxiety symptoms (Record at 65), she told Dr. Thomas she left because of "issues with kids'

father – he was unable to care for kids." *Id*.  This is more consistent with caseworker notes in the record, which do not report anxiety interfering with Bonnell's cashier job, but do indicate that Bonnell was fired over childcare issues.  Record at 720 (Note of March 22, 2018:  when Bonnell's boyfriend was away from home, "she missed her double shift at work and they fired her for it"); *and see* Record at 594 (Note of December 14, 2017; "Krissy also spoke about not working on the weekend because that is when Eddy drinks"); 600 (Note of December 11, 2017: "Krissy said that over the weekend Eddy was watching the kids while she was working and he wasn't paying attention to the kids and they went 'outside in the snowstorm without shoes and a coat and were picked up by the police.' … Krissy said that she smelt alcohol on her boyfriend's breath"); 720

Additionally, the GAF scores assigned by Dr. Thomas very likely took into consideration factors which are not directly tied to Bonnell's ability to perform work-related tasks, specifically the substance use and gambling problem she reported to him.  Record at 833, 834.[2]

Considering all of this, and also given that the ALJ had already recognized that Bonnell had limitations in her ability to work caused by her severe mental impairments, it is not likely that consideration of Dr. Thomas's assigned GAF scores of 49 would cause the ALJ to change her decision that Bonnell was able to work.  Therefore, I will not remand the case on the basis of the ALJ's error.

---

[2] The ALJ acknowledged Bonnell's substance use, but found that it did not constitute a severe impairment. Record at 25.  Although this seems an unusual conclusion, it is supported by substantial evidence.  Substance use is not mentioned in the record by Bonnell, her attorney, or  Dr. Gold.  Even more surprising, it is mentioned in only one of the several years of weekly caseworker notes from Crossroads Community Services, and then it is not in the context of employment.  Record at 720.  Dr. Coleman observed that Bonnell had a dual diagnosis of addiction and mental illness, and that she admitted to heavy substance use.  Record at 763 ("The claimant drinks three to four times a week until blacking out.  Marijuana was last used one week ago, cocaine was last used one week ago, and heroin was used three weeks ago").  He nevertheless found Bonnell had adequate abilities to perform simple work. Record at 767-768.

C.      *Hypothetical Questions Posed to the Vocational Expert*

Bonnell's final claim pertains to the hypothetical questions the ALJ asked the vocational

expert at the end of her hearing.  She writes:

> The ALJ's decision is not supported by substantial evidence since the hypothetical to the
> vocational expert was deficient.  It did not include even the limits of Dr. Coleman as
> explained in his letter his diagnosis of "unspecified disruptive impulse control, and
> conduct disorder, polysubstance use disorders, and borderline personality disorder."

*Brief* at 11.

Dr. Coleman's diagnoses, however, are not specific functional limitations which could

have been included in a hypothetical question to a vocational expert.  Bonnell has not given any

example of a specific functional limitation which she claims was omitted by the ALJ.  Nor is it

facially apparent that any additional limitations should have been included, since, as discussed

above, Bonnell has not shown that the ALJ erred in her treatment of the medical opinion

evidence.  Thus, it is impossible to find that Bonnell is entitled to relief on this claim.

D.      *Conclusion*

The record as a whole reveals that Bonnell has not experienced success in her adult life.

Notably, she has never lived independently, having received weekly assistance from a

caseworker since the age of 21.  Record at 68, 69, 588-758, 796-829, 1995-2008.  Despite this

high level of support, her caseworker notes reflect a constant series of domestic crises,

investigations by Child and Youth Services, economic disasters, and failed attempts to work or

study, culminating in two years of homelessness during which Bonnell was separated from her

children.  Record at, *e.g.*, 62, 70, 532, 527, 552, 569, 590.  It is impossible to escape the

suspicion that Bonnell has mental limitations that are somehow not captured by the functional

analysis mandated by the Agency.

Nevertheless, given the narrow and deferential standard applicable here, and given the

specific issues raised by Bonnell, it is clear that she cannot be granted relief.  The undersigned

will therefore deny the present Request for Review, but at the same time hope that, if Bonnell's

general situation does not improve, that time will clarify the exact nature of any psychiatric

barriers which prevent her from moving forward in life.


BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE